### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA


BRYAN DINGLE,                                    :
                                                 :
                        Plaintiff,               :
                                                 :
            v.                                   :       CIVIL ACTION NO. 23-5178
                                                 :
MAJOR TOMMAGE,                                   :
                                                 :
                        Defendant.               :


### MEMORANDUM OPINION

**SCHMEHL, J. /s/ JLS**                                              **July 16, 2024**

      Plaintiff Bryan Dingle, a convicted prisoner currently incarcerated at SCI Smithfield, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights.  Currently before the Court are Dingle's Complaint ("Compl." (ECF No. 1)), his Motion for Leave to Proceed *in Forma Pauperis* (ECF No. 5), and his Prisoner Trust Fund Account Statement (ECF No. 6).  Dingle asserts claims against Major Tommage, alleged to be a Commissioner of the Philadelphia Department of Prisons ("PDP") in charge of medical care, in his individual and official capacities.  (Compl. at 1.)  For the following reasons, the Court will grant Dingle leave to proceed *in forma pauperis* and dismiss his constitutional claims with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  His state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.  Dingle will not be granted leave to amend but may pursue his state law claims in an appropriate state court forum.

I.      **FACTUAL ALLEGATIONS**[1]

Dingle's Complaint is brief.  He alleges that at the time of the incidents giving rise to his claims, he was an inmate at PICC[2] in the custody of the PDP.  (Compl. at 1.)  He further alleges that Tommage was the Commissioner of PDP and responsible for the Department's Medical Administration.  (*Id*.)  He alleges that Tommage and the Defendants[3] were aware of the dangers associated with COVID-19.  (*Id*. at 2-3.)  He further alleges that the Defendants knowingly exposed Dingle to the virus by permitting inmates and staff who had been exposed to COVID-19 to be housed with Dingle.  (*Id*. at 2.)  He further alleges that the Defendants did not provide Dingle with personal protective equipment.  (*Id*.)  Dingle avers that the Defendants did not require inmates who had been exposed to COVID-19 to present a negative test result before allowing them to have contact with Dingle.  (*Id*.)  He claims that, as a result, he was exposed to and became infected with COVID-19.  (*Id*.)  Dingle alleges further that while ill, he experienced head, chest, and body pains, shortness of breath, and impairment of unidentified organs.  (*Id*.)  He alleges that he continues to experience shortness of breath and pain, and that he also experiences fear and depression.  (*Id*. at 3.)

Dingle asserts violations of his Eighth and Fourteenth Amendment rights, violations of Pennsylvania's criminal statutes regarding simple assault, aggravated assault, and recklessly

---

[1]      The factual allegations set forth in this Memorandum are taken from Dingle's Complaint (ECF No. 1).  The Court adopts the pagination supplied by the CM/ECF docketing system.

[2]      The Court understands this acronym to refer to the Philadelphia Industrial Correctional Center.

[3]      Throughout his Complaint, Dingle refers to "Defendants."  (*See* Compl.)  Tommage is the only named Defendant, and it is not clear whether he is alleged to have participated in the conduct Dingle describes or is named because he allegedly supervised and directed other individuals who engaged in that conduct.  *See infra*, Section 3.A.

endangering another person, 18 Pa. Stat. and Cons. Stat. §§ 2701, 2702, 2705, and a claim for infliction of emotional distress.  (*Id*. at 3.)  He seeks money damages.  (*Id*.)

## II.    STANDARD OF REVIEW

The Court will grant Dingle leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]   Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Dingle is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'"  *Id.* (quoting *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244 (3d Cir. 2013)).  However, "*pro se* litigants still must allege sufficient facts in their complaints to support

---

[4]      However, as Dingle is a prisoner, he will be obligated to pay the full filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).   Moreover, "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."   Fed. R. Civ. P. 12(h)(3).

## III.   DISCUSSION

### A.   Claims Against Tommage Based on Dingle's Exposure to COVID-19

Dingle asserts that Tommage violated his Eighth and Fourth Amendment rights.   (Compl. at 3.)   The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.   "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."   *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.   Tommage's Personal Involvement and Conduct by Unnamed Defendants

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.   *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."

- 4 -

*Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Dingle alleges that Tommage was the Commissioner of the PDP and responsible for the Department's Medical Administration.  (Compl. at 1.)  He also alleges that Tommage and unnamed Defendants had knowledge of COVID-19 and its associated dangers.  (*Id*. at 1-2.)  The remainder of his Complaint describes conduct engaged in by unnamed "Defendants," but does not ascribe any of this conduct to Tommage specifically.  (*See* Compl.)  It is not clear whether Tommage participated in the conduct described along with the unnamed Defendants.  *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"); *see also Rode*, 845 F.2d at 1207.

Dingle may be asserting his claims against Tommage based on Tommage's supervisory position.  Liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga*, 806 F.3d at 227; *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*).  Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  This type of liability includes a failure to supervise, however,

a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Id.* at 317; *see also Chavarriaga*, 806 F.3d at 227. A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

"Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had

knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Dingle alleges that Tommage was the "head of medical at PDP." (Compl. at 1.) He does not allege that Tommage established or maintained a policy whose implementation resulted in a violation of Dingle's constitutional rights. He does not allege that Tommage participated in the alleged violation of Dingle's rights or directed the unnamed Defendants to violate them. Dingle's allegations as to Tommage's participation in the violation of his constitutional rights is conclusory and undeveloped to state a plausible claim, and Dingle's claims against Tommage will be dismissed. For the reasons that follow, Dingle will not be granted leave to amend his claims against Tommage.

### 2.   Claims Arising from Exposure to COVID-19

Dingle's claims arise from his exposure to and resulting infection with the COVID-19 virus. (Compl. at 2-3.) The United States Court of Appeals for the Third Circuit, however, affirmed that "[t]o establish deliberate indifference [in the COVID-19 context, the prisoner plaintiffs] must show the Government knew of and disregarded an excessive risk to their health and safety." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 329 (3d Cir. 2020) (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). The Court of Appeals further held that "[t]he context

of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and must not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic, as constitutional rules "are not subject to mechanical application in unfamiliar territory." *Id.* at 329-30 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)).  Thus, where the facility has taken concrete steps towards mitigating the medical effects of COVID-19 on a detention facility, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious preexisting medical conditions the prisoner may have.  *Id.* at 330-31; *see also Mincy v. Governor of the Commonwealth of Pennsylvania*, 2022 WL 4115485, at *1 (3d Cir. Sept. 9, 2022) (*per curiam*) (affirming dismissal of amended complaint and the finding that further amendment would be futile where "many preventative measures that were taken from the start of the pandemic, including the suspension of in-person visits, screening of staff for the virus, inmate quarantines, and the provision of masks and cleaning materials.  In light of these measures and the unprecedented and evolving nature of the pandemic, Mincy does not have a plausible claim that prison officials disregarded an excessive risk of harm."); *Muata v. Hicks*, 2022 WL 2526692, at *1 (3d Cir. July 7, 2022) ("Even if plaintiffs could show that Slaughter and Hicks knew of the risk posed by COVID-19, despite its unprecedented and unpredictable nature, they have failed to allege that either defendant disregarded that risk when creating the prison's policies.").

Dingle alleges that he was not provided with personal protective equipment and was exposed to inmates and staff who were infected with the COVID-19 virus, and that, as a result, he

became infected with the virus and continues to experience symptoms.  (Compl. at 2-3.)  However, in his Complaint, he refers to testing and quarantining of infected inmates.  (*See* Compl. at 2.) Having conceded that prison officials took concrete steps towards mitigating the medical effects of COVID-19, Dingle's claim that he was nonetheless infected fails to state a plausible claim. *Mincy*, 2022 WL 4115485, at *1.

### B.     State Law Claims

Because the Court has dismissed his federal claims with prejudice, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over Dingle's state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc.*

*v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Dingle does not allege the citizenship of the parties. Rather, he provides only the address of SCI Smithfield for himself; he does not provide an address for Tommage or any other Defendant against whom he seeks to assert claims. Accordingly, Dingle has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue. The claims will be dismissed without prejudice for lack of subject matter jurisdiction. Dingle may pursue these claims in an appropriate state court forum.

## IV.     CONCLUSION

For the foregoing reasons, the Court the Court will grant Dingle leave to proceed *in forma pauperis* and dismiss his constitutional claims with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). His state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. Dingle will not be granted leave to amend but may pursue his state law claims in an appropriate state court forum. An appropriate Order follows.